

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Daniel A. Loveland, Jr.*
*Assistant United States Attorney*
*Daniel.Loveland2@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4973*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*

January 19, 2021

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2021 MAR 10 PM 1:25
CLERK'S OFFICE
AT BALTIMORE
BY_______DEPUTY

David Irwin
Kramon & Graham
One South Street
Suite 2600
Baltimore, Maryland 21202
410-752-6030
dirwin@kg-law.com

***VIA E-MAIL***

Re: *United States v. Mathew Palmer* SAG-21-014

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Mathew Palmer (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office") (together "the Parties"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **February 1, 2021**, it will be deemed withdrawn. The terms of the Agreement are as follows:

## Offense of Conviction

1. The Defendant agrees to waive his right to an Indictment and plead guilty to a one-count Information, which charges the Defendant with **Distribution of Child Pornography**, in violation of 18 U.S.C. § 2252(a)(2), (b)(1). The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

## Elements of the Offense

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Information, in the District of Maryland, the Defendant, with knowledge:

a. *First,* knowingly distributed a visual depiction of sexually explicit conduct;

b. *Second,* the production of said visual depiction was of a minor, and the production of said depiction involved the use of a minor engaging in sexually explicit conduct;

c. *Third*, said visual depiction was shipped, transported, or mailed in interstate or foreign commerce, by any means including computer;

d. *Fourth*, knew that the performer in said visual depiction was a minor and knew that said visual depiction was of such minor engaged in sexually explicit conduct.

**Penalties**

3. The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|
| 18 U.S.C. § 2252(a)(2), (b)(1) | 5 years | 20 years | 5 Year Minimum, Life Maximum | $ 250,000 | $100, $5,000 (18 U.S.C. § 3014) |

a. Prison: The Bureau of Prisons has sole discretion to designate the institution at which the Defendant will serve his term of imprisonment.

b. Supervised Release: If the Defendant violates the conditions of his supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, 3664, and 2259 (making restitution mandatory in cases under Chapter 110 of Title 18, including the offense of conviction).

d. Payment: Any fine or restitution shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum

schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

**Sex Offender Registration**

4. The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crime to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

**Waiver of Rights**

5. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a. The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against him. By agreeing to proceed by way of Information, she is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

b. If the Defendant had pleaded not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

c. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

d. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses

in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

e. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

f. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

g. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

h. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

i. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

6. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a

sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence. The Defendant further understands that any Guidelines Stipulation contained herein is not binding on the Court.

**Factual and Advisory Guidelines Stipulation**

7. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

j. The Parties further agree that the applicable base offense level is **22** pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2G2.2(a)(2) to account for the Defendant's knowing distribution and receipt of child pornography.

k. The Parties further agree that the Defendant receives a **2-level enhancement** under § 2G2.2(b)(2) because the child pornography included children under the age of 12.

l. The Parties further agree that the Defendant receives an additional **2-level enhancement** under § 2G2.2(b)(3)(F) because the offense involved knowing distribution of child pornography other than the types described in foregoing provisions.

m. The Parties further agree that the Defendant receives an additional **4-level enhancement** under § 2G2.2(b)(4) because the offense involves material that depicted sadistic and masochistic conduct.

n. The Parties further agree that the Defendant receives an additional **2-level enhancement** under § 2G2.2(b)(6) because the offense involved the use of a computer.

o. The Parties further agree that the Defendant receives an additional **5-level enhancement** under § 2G2.2(b)(7)(D) because the offense involved more than 600 images.

p. This Office does not oppose a **2-level reduction** in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an **additional 1-level decrease** in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

q. Accordingly, the Parties anticipate a **final offense score of 34** after accounting for the above, including acceptance of responsibility.

8. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

9. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

**Obligations of the Parties**

10. At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Information. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

**Waiver of Appeal**

11. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

**Defendant's Consent to Proceed Remotely for Rule 11 Guilty Plea**

12. This Office and the Defendant agree, pursuant to the Coronavirus Aid, Relief, and Economic Recovery Act, H.R. 748 (the CARES Act), enacted on March 27, 2020, that certain federal court proceedings are permitted to proceed telephonically, or via video-teleconference. The parties further agree that Section 15002(b) of the CARES Act permits the District Court to conduct certain hearings in felony matters remotely. Further, pursuant the District of Maryland's Standing Order 2020-06, dated March 29, 2020, and subsequent Standing Orders, District Court Judges are permitted to conduct Rule 11 plea hearings and sentencing hearings in felony cases remotely.

13. The Defendant consents, after fully consulting with undersigned defense counsel, to proceed with the Rule 11 plea hearing telephonically, or via video-teleconference, in this matter. Because an in-person / in-court proceeding in this matter cannot occur without seriously jeopardy to public health and safety, and because delay in this case will result in serious harm to the interests of justice, the Defendant specifically requests to proceed remotely. The Defendant agrees to proceed remotely, and knowingly and expressly waives any and all rights to a personal appearance in court for his Rule 11 plea proceeding.

**Forfeiture**

14. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

15. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities: Such property includes, but is not limited to an **Apple iPhone 6s model A1633 cellular phone bearing serial number FFMWF18RGRY2 and IMEI number 354957074518229**.

16. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

17. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

18. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

**Defendant's Conduct Prior to Sentencing and Breach**

19. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

20. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea.

**Court Not a Party**

21. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

**Entire Agreement**

22. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

Daniel A. Loveland, Jr.
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

1|26|2021
Date

Mathew Palmer

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

1|26|2021
Date

David Irwin

Rev. August 2018

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Mathew Palmer was born in 1976 and was a Maryland resident at all times relevant to this investigation. During the course of the conduct described below, Palmer held positions with the Maryland state government, including as a Deputy Legislative Officer, and Chief Operating Officer with the Maryland Department of Commerce.

Investigators at Homeland Security Investigations received reports from Kik advising that multiple accounts using similar "anonjohnny" usernames had uploaded at least one image of child pornography or child-sensitive material between April 2019 and September 2019. The usernames included "anonjohnny2", "anonjohnny654321", "anonjohnny80", "anonjohnny72", and "anonjohnny9800". Each time after Kik detected the child exploitive material, it shut down the offending accounts.

The records Kik provided included information concerning Internet Protocol (IP) addresses that were used to access the anonjohnny accounts. Each of the 5 accounts was accessed by an IP address, which was determined to be serviced by Verizon. Records from Verizon showed that the Verizon account was in Mathew Palmer's name, and included Mathew Palmer's address in Severna Park, Maryland, his phone number, and the e-mail address "palmermathewj@gmail.com".

The Kik accounts were also accessed by IP addresses that resolved to the State of Maryland, demonstrating that the user of the accounts was accessing the materials from state government internet services.

On August 11, 2020, investigators executed a search warrant at Palmer's residence in Severna Park and seized several electronic devices, including Palmer's laptop and personal cell phone (an Apple iPhone 6S, IMEI: 354957074518229).

While conducting the search, investigators interviewed Palmer after explaining his *Miranda* rights to him. After knowingly, intelligently, and voluntarily waiving those rights, Palmer claimed ownership of two cell phones, one for his work and one that was personal, as well as his laptop. Palmer then said he wanted to speak to a lawyer and asked if he could speak to his wife. Shortly thereafter, without being asked any questions, Palmer said, "By the way, I mean none of them are involved or know". An HSI agent who was unable to hear what Palmer had said stated, "I'm sorry what did you say?" to which Palmer replied "None of them are involved."

Palmer's personal cell phone, the iPhone 6S, seized during the search, was named "Mathew's iPhone" and was linked to the e-mail address and Apple ID

"mpalmer@mdchamber.org". The phone was associated with Palmer's Facebook, and included numerous pictures of Palmer and identifying text message conversations.

Palmer's phone was logged into a new Kik account "anonjohn1112". Palmer used this Kik account to engage in chats with several other Kik users concerning child exploitation. For example, in a conversation with "Brian", in his very first message Palmer said, "Hi I have naughty thoughts about my teen daughters" whom Palmer said were 13 and 17 years old. Palmer then sent images to "Brian" of two minor girls whom Palmer knew through personal acquaintance, representing that these girls were his daughters. (These minor children were not in fact Palmer's children but were real children known to Palmer through personal acquaintance.) Palmer told Brian "I want to use them as my sluts" and claimed that his fictitious daughters "have taken my cock." In another conversation with user "hnytaboos" Palmer stated that his preference for children was for those aged eight and higher. Palmer again sent pictures of the same two minor girls he knew from personal acquaintance, again representing them to be his own daughters.

Located on Palmer's phone, within the iPhone 6S's "camera roll" was at least 936 images constituting child pornography and 368 videos constituting child pornography. Additionally located within an application called "Wickr", which is used to send covert and encrypted messages were two additional videos that constitute child pornography. The child pornography found on Palmer's phone included oral, vaginal, and anal penetration of minors, including prepubescent minors; child pornography involving toddlers; and child pornography involving bondage and other sadistic acts. Also located on the phone were numerous age-difficult or child exploitive images that were not categorized as child pornography. Below are some examples of the child pornography recovered from the Defendant's possession within his iPhone 6S.

| **Location Recovered from within the iPhone 6S** | **File Name:** | **Description:** |
|---|---|---|
| Camera Roll | IMG_6977_3.JPG | An image depicting a prepubescent female, reasonably believed to be under the age of five, wearing a yellow and white "Spongebob" tank top. The female is in a seated position and her pink and white underwear are pulled down to her knees, exposing her vagina. The minor has one hand wrapped around the penis of an adult male who is orally penetrating her. |
| Camera Roll | IMG_2548_6.JPG | An image depicting a prepubescent female, reasonably believed to be under the age of five. The minor is lying on her back on an orange blanket and pillow. She is wearing makeup, to include bright lipstick, and has pink flowers in her hair. An adult male is situated between her spread legs and is vaginally penetrating her with his erect penis. |

| Camera Roll | IMG_3075_1.mp4 | A video, approximately one minute in length, depicting a naked prepubescent female, lying on a bed. The camera zooms in between her spread legs, focusing on her vagina. The minor female reaches down and spreads the lips of her vagina. The female then flips over onto her hands and knees and faces away from the camera. The camera zooms in on her vagina and anus. The minor reaches back and spreads her buttocks. The camera focuses on the erect penis of an adult male. The minor female then straddles the adult male and he penetrates her with his erect penis. |
|---|---|---|
| Camera Roll | IMG_5897.mp4 | A video, approximately one minute and fifty-six seconds, depicting a minor female being orally penetrated by an adult male. The video cuts to an adult male anally penetrating the prepubescent female while the second adult male continues to orally penetrate her. The person holding the camera, who had previously been orally penetrating the minor, begins to anally penetrate the minor. As he continues to penetrate her anus, the adult male spreads the lips of the minor's vagina. |
| Wickr | trim.5A9AEA57-ECAC-41E8-AEF9-50A5AADC6097.MOV | A video, approximately fifty-one seconds in length, of a prepubescent female wearing black stockings. Her legs are tied with yellow ropes and her legs are spread, exposing her vagina. An adult male is digitally penetrating the minor's vagina. The camera shifts, showing the minor's hands tied above her head with yellow rope as she is being orally penetrated by the adult male. The camera angle continues to switch between the oral and digital penetration of the minor. |
| Wickr | trim.C8FFD97E-BCB1-48D7-9B37-74A11EFB1B86.MOV | A video, approximately one minute and fifty-nine seconds in length, depicting a minor female being orally penetrated by an adult male. The minor is only wearing a necklace and the adult male's hand is placed on the back of her head, forcing her mouth onto his penis. |

In addition to possessing hundreds of images and videos constituting child pornography as described above, Palmer knowingly both received and distributed child pornography. For example, using the Wickr application on his iPhone, and a Wickr account displaying the username johnanon1123 Palmer sent the video "trim.5A9AEA57-ECAC-41E8-AEF9-50A5AADC6097.MOV" as described above to a chat group on the Wickr application that contained 58 other participants. In addition, using the same application and username, Palmer sent the video"trim.C8FFD97E-BCB1-48D7-9B37-74A11EFB1B86.MOV" as described above to another person.

Also located within the iPhone's "Notes" application were numerous url links to various Dropbox and Mega urls. Investigators clicked on these links and most links redirected to website pages stating that the material had been removed because it contained banned content, suggesting the material related to child exploitation. A small number of the links contained active websites hosting adult pornography and child pornography.

Palmer's possession, distribution, and receipt of the child pornography described above was to further his own prurient interest. The child pornography described above traveled in and affected interstate and foreign commerce, including by a computer (Palmer's iPhone) and through the internet, including through the Wickr application. The child pornography described above included, and the creation of which involved, actual minors engaged in sexually explicit conduct, including sexual intercourse; sadistic and masochistic abuse; masturbation; and lascivious exhibition of the anus, genitals, and pubic area of the minors. Palmer knew that the children depicted in the child pornography were minors under the age of 18 and that the material he was receiving, distributing, and possessing constituted child pornography.

SO STIPULATED:

Daniel A. Loveland, Jr.
Assistant United States Attorney

Mathew Palmer
Defendant

David Irwin
Counsel for Defendant